Salvatore Vecchione and Andrew Vecchione,
Appellants, *v.* Township of Cheltenham,
Appellee.

Argued April 2, 1974, before President Judge BOW-MAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT.

*John F. Ledwith,* with him *Schubert, Mallon, Walheim & deCindis,* for appellant, Andrew Vecchione.

*Henry L. Menin,* with him *Menin, Wilson & Flick,* for appellant, Salvatore Vecchione.

*Samuel H. High, Jr.,* with him *John F. Christie, III,* and *High, Swartz, Roberts and Seidel,* for appellee.

OPINION BY JUDGE MENCER, June 7, 1974:

This condemnation case raises an intriguing question of first impression. Does the failure of the Pennsylvania Eminent Domain Code[1] to provide for a hearing prior to the filing of a declaration of taking, which results in the passing of the title in the property condemned to the condemnor, violate the due process clause of the United States and Pennsylvania Constitutions?

The factual and procedural background that frames this question can be briefly stated. Land consisting of 8.677 acres owned by Salvatore and Andrew Vecchione (condemnees) as tenants in common became the subject of eminent domain proceedings initiated by Cheltenham Township, a township of the first class, located, as is the land in question, in Montgomery County. The purposes of the condemnation were stated to be to acquire ground for a sanitary landfill and for enlarging and maintaining the Township's public parks, recreational areas, and facilities. Condemnees filed preliminary objections to the declaration of taking which were dismissed by the Court of Common Pleas of Montgomery County. This appeal was taken from the lower court's order of dismissal, and we affirm.

Condemnees strongly contend that the answer to the question above is dictated by the case of *Fuentes v. Shevin,* 407 U.S. 67, 92 S. Ct. 1983, 32 L. Ed. 2d 556 (1972), *reh. den.,* 409 U.S. 902, 93 S. Ct. 177, 180, 34 L. Ed. 2d 165 (1972). In *Fuentes* the United States Supreme Court held that the replevin laws of Florida and Pennsylvania violated the due process clause of the Fourteenth Amendment insofar as they denied the right to a prior opportunity to be heard before chattels were taken from their possessor.

Section 402(a) of the Eminent Domain Code, 26 P.S. §1-402(a), reads: "Condemnation, under the power

---

[1] Act of June 22, 1964 (Special Sess.), P. L. 84, *as amended,* 26 P.S. §1-101 et seq.

of condemnation given by law to a condemnor, which shall not be enlarged or diminished hereby, shall be effected only by the filing in court of a declaration of taking, with such security as may be required under section 403(a) [26 P.S. §1-403], and thereupon the title which the condemnor acquires in the property condemned shall pass to the condemnor on the date of such filing, and the condemnor shall be entitled to possession as provided in section 407 [26 P.S. §1-407]."

Section 407(a) of the Eminent Domain Code, 26 P.S. §1-407(a), reads: "The condemnor, after the expiration of the time for filing preliminary objections by the condemnee to the declaration of taking, shall be entitled to possession or right of entry upon payment of, or a written offer to pay to the condemnee, the amount of just compensation as estimated by the condemnor. If a condemnee thereafter refuses to deliver possession or permit right of entry, the prothonotary upon praecipe of the condemnor shall issue a rule, returnable in five days after service upon the condemnee, to show cause why a writ of possession should not issue, upon which the court, unless preliminary objections warranting delay are pending, may issue a writ of possession conditioned upon payment to the condemnee or into court of such estimated just compensation and on such other terms as the court may direct."

Admittedly, these sections provide for the passage of title to the property condemned on the date of the filing of the declaration of taking and, after a minimum of thirty-five days[2] following the condemnee's being served with notice of condemnation and following service of a rule to show cause upon the condemnee, a court of common pleas, unless preliminary objections warranting delay are pending, may issue a writ of pos-

---

[2] Time limitations provided by Sections 406(a) and 407(a), 26 P.S. §§1-406(a), 1-407(a).

session conditioned upon payment of estimated just compensation and on such other terms as the court may direct.

Thus the possibility of the loss of possession of property, when coupled with certain language found in *Fuentes v. Shevin, supra,*[3] actuates the interesting issue presented here. However, we are satisfied that a careful reading of *Fuentes* must produce the conclusion that it is inapposite to a condemnation proceeding. This conclusion is foundationed on the major exception recognized and spelled out in *Fuentes*. The majority opinion, citing with approval *Boddie v. Connecticut,* 401 U.S. 371, 91 S. Ct. 780, 28 L. Ed 2d 113 (1971), held that an opportunity for a hearing before deprivation of any significant property interest is constitutionally mandated except where some valid governmental interest would justify postponement of the due process right for a hearing until after the taking of the property.

The power of eminent domain is certainly a "valid governmental interest" since it is an attribute of the sovereignty of the Commonwealth. *Philadelphia Clay Company v. York Clay Company,* 241 Pa. 305, 88 A. 487 (1913).

Section 406(e) of the Eminent Domain Code, 26 P.S. §1-406(e), provides for a hearing at which all procedures followed by the condemnor, his power to condemn, and the sufficiency of his security may be objected to and evidence presented to support such objections, after which "[t]he court shall determine promptly all preliminary objections and make such preliminary and final orders and decrees as justice shall require, including the revesting of title."

We agree fully with the court below when it wrote: "The Pennsylvania Eminent Domain Code provides that

---

[3] "But it is now well settled that a temporary, nonfinal deprivation of property is nonetheless a 'deprivation' in the terms of the Fourteenth Amendment." 407 U.S. 84-85.

'within thirty days after the filing of the declaration of taking the condemnor shall give written notice of the filing to the condemnee.' 26 P.S. §1-405(a). After being served with such notice, condemnee may, within 30 days, file preliminary objections and have a hearing, all of which was done in the instant case. Condemnee has 'an opportunity to be heard at some stage of the proceedings' as is required. [*See City of Oakland v. United States*, 124 F. 2d 959 (9th Cir. 1942).] Indeed, the condemnees have utilized their opportunity to be heard at the hearing before Judge Cirillo, at the argument before the Court en banc and now before the Commonwealth Court.

"The rationale of the Fuentes case that a prior hearing must take place before a *private party plaintiff* seizes the defendant's property does not apply in a condemnation proceeding. *Here a municipal body,* authorized by the Commonwealth to exercise its sovereign right of eminent domain, is condemning land for public use. The facts reveal that condemnees had an evidentiary hearing at a critical stage of the proceedings where, had their preliminary objections been sustained, the Court en banc could have revested title in them. The fact that the hearing occurred after the passage of title is rendered irrelevant because, by the terms of section 406(e) condemnor's title is defeasible until the preliminary objections are finally decided. The Court could have revested title in the condemnees upon a finding of a substantive or procedural irregularity in condemnor's actions." (Emphasis supplied.)

Accordingly, we do not find that the failure of the Eminent Domain Code to provide a hearing prior to the filing of a declaration of taking is violative of the due process requirements of the United States or Pennsylvania Constitutions. *Accord, Sager v. Burgess,* 350 F. Supp. 1310 (E.D. Pa. 1972).

Condemnees also contend that a township of the first class may not exercise the sovereign power of eminent domain. There can be little, if any, dispute that the power of eminent domain is an awesome power and that it springs from the sovereign rights of the Commonwealth. *Interstate Cemetery Company Appeal*, 422 Pa. 594, 222 A. 2d 906 (1966). However, we must reject the premise that the sovereign power of eminent domain must belong exclusively to the Commonwealth and that a municipality cannot be authorized to acquire lands by condemnation.

The Constitution of the Commonwealth of Pennsylvania provides in Article X, §4: "Municipal and other corporations invested with the privilege of taking private property for public use shall make just compensation for property taken. . . ."

This provision of the Pennsylvania Constitution indicates clearly that there may be a delegation of power by the sovereign to "municipal and other corporations" to exercise the sovereign's power of eminent domain. Section 1901 of The First Class Township Code, Act of June 24, 1931, P. L. 1206, *as amended*, 53 P.S. §56901, provides for the exercise of eminent domain by a first-class township: "In the laying out, opening, widening, extending, vacating, grading or changing the grade or lines of streets or highways, the construction of bridges and the piers and abutments therefor, the construction of slopes, embankments and sewers, including storm water drains, the erection and extension of waterworks, wharves and docks, public buildings, public works, lands and places for the disposal of ashes and other refuse materials, garbage treatment works and libraries, the establishing of parks, playgrounds and recreation places, the changing of watercourses, and for all other purposes authorized by this act, a township of the first class may enter upon, appropriate, injure or destroy private lands, property and material."

The power and authority of a first-class township to acquire real property for landfill purposes is set forth in Section 1502 of The First Class Township Code, *as amended,* 53 P.S. §56527.

Condemnees have cited cases which distinguish, for purposes of tort liability, activities by a municipality on a governmental or proprietary classification. *Morris v. Mt. Lebanon Township School District,* 393 Pa. 633, 144 A. 2d 737 (1958); *DeSimone v. City of Philadelphia,* 380 Pa. 137, 110 A. 2d 431 (1955). However, we fail to comprehend that those cases limit the exercise of the power of eminent domain expressly granted to townships of the first class by statute.

Likewise, condemnees' assertion that a municipality may not condemn ground for park purposes if, in fact, the municipality cannot presently use the ground for the purpose stated in the declaration of taking has no merit. The courts have long recognized that a condemnor may have the right to acquire land for future expansion and development. *Pittsburgh School District Condemnation Case,* 430 Pa. 566, 244 A. 2d 42 (1968).

In addition, the condemnees contend that Cheltenham Township's declaration of taking was improper, the taking of their property was arbitrary, discriminatory and capricious, the purposes stated in the declaration of taking are at variance with the purposes authorized by the enabling legislation, and that the newspaper utilized to publish the condemning ordinance was not one of general circulation. We have carefully examined each of these contentions and find no merit in them, for the reasons set forth in the able opinion of Judge Stanziani written for the court below and reported as *Cheltenham Township v. Vecchione,* 96 Montg. Co. L. R. 388 (1973).

Order affirmed.